IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Pamela S. Tipton, :

Plaintiff, :

v. : Case No. 2:14-cv-1209

: JUDGE GREGORY L. FROST

Commissioner of Social Security, Magistrate Judge Kemp

Defendant. :

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Pamela S. Tipton, filed this action seeking review of a decision of the Commissioner of Social Security denying her application for disability insurance benefits. That application was filed on May 27, 2011, and alleged that Plaintiff became disabled on May 19, 2011.

After initial administrative denials of her claim, Plaintiff was given a hearing before an Administrative Law Judge on October 18, 2013. In a decision dated November 8, 2013, the ALJ denied benefits. That became the Commissioner's final decision on June 18, 2014, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on October 7, 2014. Plaintiff filed her statement of specific errors on December 4, 2014, to which the Commissioner responded on February 9, 2015. A reply brief was filed on February 22, 2015, and the case is now ready to decide.

II. Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 57 years old at the time of the administrative hearing and who has a high school education, testified as follows. Her testimony appears at pages 116-123 and 125-34 of the administrative record.

Plaintiff testified that she became disabled on May 19, 2011. She had previously had a spontaneous dissection of the right coronary artery and was fortunate to have survived. Her doctors told her that they did not want her to experience either physical or mental stress or do any stair climbing or lifting. She tried to work afterwards but was unable to continue beyond May 19, 2011. Her job involved, among other things, lifting and transporting patients in a hospital setting.

When asked why she could no longer work, Plaintiff responded that she is worried about what might happen to her, and she also has no energy. She could lift a gallon of milk. She could not walk for more than fifteen minutes and did not do any housework. In an eight-hour day, she could stand for a few hours, but not continuously, and walk about the same amount of time. Sitting was not a problem for her. She had been told to avoid extremes of temperature as well as any stressful situations. She had actually had an increase in symptoms due to the stress of anticipating the hearing.

## III. The Medical Records

The medical records in this case are found beginning on page 294 of the administrative record. The pertinent records can be summarized as follows.

Plaintiff was hospitalized on April 21, 2007, due to pronounced chest pain. A catheterization showed an inferior wall motion abnormality with a dissection in the right coronary artery. Two stents were placed, and she was discharged on April 25, 2007. She followed up with Dr. Houmsse on July 12, 2007, at which time she reported persistent right-sided chest pain and back pain. He noted that an angiogram done in May, 2007, showed persistent residual dissection in the right coronary cuff. He also reported that she had gone back to work but was "overwhelmed with worsening emotional stress and apprehension of having

dissection of her descending aorta." His diagnoses included coronary artery disease due to dissection of the right coronary artery with status post angioplasty and stent placement, ischemic cardiomyopathy, a history of scleroderma, mixed anxiety and apprehension, hyperlipidemia, and hypertension. (Tr. 302-06).

On December 17, 2007, Dr. Ellis at the Cleveland Clinic reported that Plaintiff had seen him for a second opinion about the management of her condition. She did not describe further chest discomfort but had gained 20 pounds due to inactivity, and said that she was depressed. Dr. Ellis was waiting for information about an angiogram, but he did tell Plaintiff that because the dissection was spontaneous, she was at increased risk for a subsequent dissection. He advised a moderate level of physical activity for at least 20 minutes five times per day. (Tr. 309-10).

Plaintiff saw Dr. Houmsse again on April 20, 2011. She told him she had sharp chest pain ever since the dissection had occurred, and was more recently experiencing a tightness in her chest. The stress of her job precipitated the pain. Dr. Houmsse thought the chest pain was secondary to the dissection and he discussed with Plaintiff the possibility of going on disability to reduce the amount of stress in her life. He encouraged light walking but discouraged high impact cardio exercise and weight training. He planned to see her again in a year. (Tr. 314-20). He subsequently wrote a letter dated November 29, 2012, in which he reported that Plaintiff had had chest pain since 2007, that she was not a candidate for surgery, and that she should be placed on disability "based on her medical history." (Tr. 449). He also wrote a letter to Plaintiff's family physician on that date, reporting that Plaintiff was experiencing some shortness of breath on exertion and occasional fluttering in the chest. She had also had one episode of severe chest pain in June of that

year which lasted for fifteen minutes. He again encouraged light walking. (Tr. 457-58). On February 4, 2013, Dr. Houmsse completed a form indicating that Plaintiff could not lift, sit, stand, or work at all and that she had a marked limitation in performing any physical activity. He also noted that she had fatigue on exertion and shortness of breath on mild exercise, as well as anginal pain and peripheral edema. (Tr. 456).

In addition to these records from examining or treating sources, there are opinions from state agency physicians. The first, Dr. Hinzman, listed the primary diagnosis as peripheral arterial disease, with cardiomyopathy as the secondary diagnosis. The only section of the Listing which he considered was section 4.12, which deals with peripheral arterial disease. He concluded that the medical evidence did not support Plaintiff's report of disabling symptoms, and found that she could do a relatively full range of light work. (Tr. 144-47). Dr. Lewis, the other state agency reviewer, noted a few more limitations, none of them major, and otherwise concurred in Dr. Hinzman's diagnosis and assessment. (Tr. 155-57). Neither had the benefit of Dr. Houmsse's November, 2012 report or his February, 2013 opinion.

## IV. The Vocational Testimony

Dr. Olsheski was the vocational expert in this case. His testimony can be found at pages 123-25 and 134-38 of the administrative record.

Dr. Olsheski testified that Plaintiff's past position was as a radiology clerk, which is classified as light and semiskilled. To the extent that she also transported patients, the job would be medium and unskilled.

Dr. Olsheski was then asked some questions about a hypothetical person of Plaintiff's age, education, and work experience who could work at the light exertional level and who could occasionally climb ramps and stairs and never climb ropes,

ladders and scaffolds. The person could also occasionally stoop and crouch and could frequently crawl. Finally, the person could not be exposed to extremes of temperature or to unprotected heights. According to Dr. Olsheski, someone with those limitations could do Plaintiff's past job as it is generally performed.

Dr. Olsheski was then asked about an individual with the same restrictions but who could perform only sedentary work. That, he said, would rule out Plaintiff's past job. He also testified that Plaintiff had some transferable job skills including typing, filing, and using a computer, but they would not transfer to other work without some minor adjustments. He then stated that a person with those limitations and skills could work as a receptionist, order clerk, or billing Clerk. Dr. Olsheski provided the number of these jobs which existed in the local and national economies.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 97-103 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff met the insured requirements of the Social Security Act through December 31, 2016. Next, he found that she had not engaged in substantial gainful activity since her alleged onset date of May 19, 2011. Going to the second step of the sequential evaluation process, the ALJ determined that Plaintiff had severe impairments including coronary artery disease, cardiomyopathy, hypertension, obstructive sleep apnea, and obesity. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process,

the ALJ found that Plaintiff had the residual functional capacity to perform work at the light exertional level but that she could only occasionally climb ramps and stairs and could not climb ladders, ropes, and scaffolds. Further, she could only occasionally stoop and crouch and could frequently crawl. Lastly, she could not be exposed to extremes of temperature or to unprotected heights.

The ALJ found that, with these restrictions, Plaintiff could do her past relevant work as a radiology clerk as it was generally performed. Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI. Plaintiff's Statement of Specific Errors

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ erred in his analysis of the Listing of Impairments; (2) the ALJ incorrectly evaluated the treating source opinions; and (3) the ALJ erred by finding that Plaintiff could perform her past relevant work. These claims are evaluated under the following standard.

Standard of Review. Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

A. The Listing of Impairments

Plaintiff’s first argument deals with the question of whether the ALJ properly considered the Listing of Impairments in his decision. The ALJ specifically referred to Sections 4.02, 4.04, 4.05, 11.04, 4.07, 3.10, 3.09 and 12.02 in finding that Plaintiff does not have an impairment of sufficient severity to make her presumptively disabled. (Tr. 99-100). Plaintiff contends that there are only two sections of the Listing pertinent to her condition: Section 4.10, entitled “Aneurysm of aorta or major branches,” which refers to, among other things, “dissection not controlled by prescribed treatment,” and Section 4.04(C), which addresses coronary artery disease. She notes that the state agency reviewers did not mention either of these, limiting their analysis to Section 4.12 (Peripheral arterial disease), and that the ALJ both erroneously considered several non-applicable sections, such as Sections 4.02 and 4.05, and did not discuss whether Plaintiff’s impairments, in combination, equaled a medical Listing. In support of this latter contention, she refers to Dr. Houmsse’s notes showing an exacerbation of her symptoms and culminating in his 2013 opinion that she had a marked limitation in physical activity, and points out that the ALJ engaged in no meaningful analysis of the question of whether

medical equivalence had been established. She requests a remand, but in her statement of errors she cites no case law supporting that request.

The Commissioner makes this counter-argument. First, it is Plaintiff's burden to demonstrate that her condition meets or equals a listed impairment. Second, she concedes that the ALJ properly found that she does not meet Section 4.04. Third, she points to no evidence or argument suggesting that she meets the requirements of Section 4.10. Thus, the only issue raised in this claim of error is whether the ALJ erred by not finding that her condition equaled a listed condition - presumably coronary artery disease as described in Section 4.04(C). As to that issue, the Commissioner argues that the only evidence which Plaintiff cites in support of her assertion that her condition might equal a listed impairment is Dr. Houmsee's opinion, but, according to the Commissioner, that opinion was properly discounted. If that is so, the Commissioner asserts, there is no basis on which to argue that the ALJ erred in his consideration of the Listing. In reply, Plaintiff appears to abandon any argument about Listing 4.04, stating instead that the ALJ's consideration of any section other than 4.10 "is immaterial here" and that "[i]n failing to consider Listing 4.10, the Commissioner failed in her responsibility." Reply memorandum, Doc. 16, at 5.

It is true that neither the state agency physicians nor the ALJ mentioned Section 4.10, and that the record contains no analysis of whether Plaintiff's condition either met or equaled that Listing. It does not appear that she met the Listing - it requires dissection not controlled by treatment, something not apparent in the record - and refers to Section 4.00H6, which requires "progression of the dissection." None of the medical records suggest that the dissection which was repaired in 2007 had progressed. Consequently, this claim of error, which

involves extensive briefing on both sides, boils down to this: was the ALJ required to compare Plaintiff's condition, as he found it to exist, to Section 4.10 to see if it is the medical equivalent of the impairment described in that section?

The regulatory scheme in question is found in 20 C.F.R. §404.1526. It describes three ways in which medical equivalence can be found. If, as here, a claimant has an impairment which is described in the Listing, but one or more of the findings necessary to meet that Listing is absent or is not of sufficient severity, medical equivalence is present if the claimant has "other findings related to [that] impairment that are of at least of equal medical significance to the required criteria." 20 C.F.R. §404.1526(b)(1). The ALJ is required, when performing this analysis, to "consider all evidence in [the] case record...." 20 C.F.R. §404.1526(c).

The case most often cited in connection with whether the ALJ adequately fulfills that duty is Reynolds v. Comm'r of Social Security, 424 Fed. Appx. 411 (6th Cir. April 1, 2011). In that case, the ALJ found that the claimant had both a severe physical and a severe mental impairment, and expressly analyzed the mental impairment under the applicable section of the Listing. Section 12.00. As the court noted, "[h]owever, once he completed his analysis under section 12.00, the ALJ simply went on to the next step in the 5–step analysis—determining residual functional capacity. No analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe "back pain" impairment) met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." Id. at 415. This was error because the ALJ simply "skipped an entire step of the necessary analysis." Id. at 416. Further, the court found the error not to be harmless because it was 'possible that the evidence [the claimant] put forth could meet this Listing." Id. This Court has applied that rationale

on a fairly consistent basis, holding that when there is some evidence which might support a finding of medical equivalence, even though there is no "heightened articulation burden" at Step Three, the ALJ has at least a minimal obligation to explain his analysis. See, e.g., Risner v. Comm'r of Social Security, 2012 WL 893882, *5 (S.D. Ohio March 15, 2012); see also Swint v. Comm'r of Social Security, 2014 WL 4426246 (S.D. Ohio Sept. 8, 2014). And, as explained in Popp v. Comm'r of Social Security, 2014 WL 1513844, *5 (N.D. Ohio April 16, 2014), "Since Reynolds, numerous district courts have vacated and remanded ALJ decisions because of the failure to conduct a meaningful Step Three analysis which evaluates the medical evidence, compares it to the applicable listing, and provides an 'explained conclusion' as to why the claimant's impairments fail to meet or equal a listed impairment."

The Court is aware that there is some tension between this line of cases and cases such as Forrest v. Comm'r of Social Security, 591 Fed.Appx. 359 (6th Cir. Nov. 17, 2014) and Wischer v. Comm'r of Social Security, 2015 WL 518658 (S.D. Ohio Feb. 6, 2015), adopted and affirmed 2015 WL 1107543 (S.D. Ohio March 11, 2015). Those cases suggest that if, elsewhere in the decision, an ALJ provides an explanation of why a Listing is not met or equaled, that is sufficient, and the explanation need not appear specifically in the section of the decision which addresses the Listing. The Commissioner does not advance that specific argument here, but does contend that the ALJ's finding that Dr. Housmme's opinion was properly discounted shows that Plaintiff did not prove that her condition met the Listing.

That argument is unavailing here. The ALJ discounted Dr. Housmme's imposition of severe limitations in Plaintiff's ability to stand, sit, or walk for any amount of time in a workday, but those are not the same findings which deal with the issue of medical equivalency under Section 4.10. Even if Plaintiff could

sit, stand, or walk for various periods of time in a workday, that would not necessarily mean that she did not equal a Listing, and if she did so, her physical capacity would be irrelevant - the case would end at Step Three without the need to go to Step Four, where residual functional capacity is assessed. The Court agrees with Plaintiff that the failure of either of the state agency reviewers or the ALJ to mention the most applicable section of the Listing, and to perform any analysis of the issue of equivalency with respect to that section, is an error requiring remand. Consequently, the first statement of error has merit.

B. The Treating Source Opinions

Plaintiff's next statement of error challenges the ALJ's assessment of the opinion of Dr. Houmsse, the treating physician. Plaintiff argues that the ALJ improperly assigned weight to the state agency reviewers' opinions before discussing Dr. Houmsee's, and also that the ALJ applied a different standard when discussing each of these opinions. In her reply, she elaborates on her argument, also contending that the ALJ's rationale was insufficient because most of the §404.1527(c) factors are not discussed in the administrative decision.

The ALJ discounted Dr. Houmsee's opinion, giving it "little weight," for these reasons. After commenting that the ultimate opinion on disability is an issue reserved to the Commissioner - something which is true, but not pertinent here, since Dr. Houmsee provided a medical source statement addressing Plaintiff's physical capabilities - the ALJ said that Dr. Houmsse's opinion on that subject was "contradicted by normal electrocardiogram findings, normal physical examination findings, and his own treatment notes depicting stable cardiovascular status except for some occasional chest pain." (Tr. 102). He also concluded that Dr. Houmsee had "relied quite heavily on the subjective report of symptoms and limitations provided by the

claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported." However, because the ALJ also found that Plaintiff was not entirely credible, he discounted Dr. Houmsee's conclusions on that basis as well. Id.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once. 20 C.F.R. §404.1527(c); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981). However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion. Moon v. Sullivan, 923 F.2d 1175 (6th Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

The ALJ did not engage in an overly detailed analysis of Dr. Houmsee's opinion. Plaintiff correctly points out that he made no mention of most of the §404.1527(c) factors, including the length of the treating relationship - which spanned a number of years - or Dr. Houmsee's specialization in cardiology. He also relied heavily on the state agency reviewers, but they did not

have the benefit of an additional year's worth of treatment notes, which showed an exacerbation in Plaintiff's symptoms, nor did they review Dr. Houmsee's opinion. Further, while relatively benign test findings might well be pertinent to more typical heart conditions such as congestive heart failure, this case does have an unusual feature; spontaneous dissections of a coronary artery are relatively rare, and more medical judgment may be necessary to determine how much physical and emotional stress someone with that condition might be able to tolerate before risking further complications. In other words, the mere physical ability to do work-related activities may not tell the entire story about what, medically, someone should do or not do in order not to be placed at an unacceptable risk of life-threatening injury. Dr. Houmsee was undoubtedly in the best position to assess this issue, and the ALJ may not have had the medical expertise to find differently. This is especially true where the state agency reviewers appeared to diagnose conditions not directly related to coronary artery dissection, such as peripheral arterial disease and cardiomyopathy. All in all, although the ALJ's discussion of Dr. Houmsee's opinion might not independently require a remand, on remand, the ALJ should reconsider that issue in light of the factors discussed here and also determine if the services of a medical consultant are necessary.

C. Past Relevant Work

Plaintiff's final assignment of error is that she performed a "composite job" made up of radiology clerk and patient transporter, and that the ALJ should not have found that she could do her past relevant work since she could not do at least part of that job. The Commissioner, in response, disputes that the job was a "composite job" and argues that the vocational expert's testimony was an appropriate basis for the ALJ's finding.

Recognizing that this issue may or may not be mooted by additional administrative proceedings, the Court nevertheless provides this comment on the “composite job” issue. Social Security Ruling 82–61 defines a composite job as having “significant elements of two or more occupations and, as such, hav[ing] no counterpart in the DOT [Dictionary of Occupational Titles].” Courts interpreting that regulation have held that “[w]here it is clear that a claimant's past employment was a ‘composite job,’ an administrative law judge may not find a claimant capable of performing her past relevant work on the basis that she can meet some of the demands of her previous position, but not all of them.” Bechtold v. Massanari, 152 F.Supp.2d 1340, 1345 (M.D. Fla. 2001)(footnote omitted). They have also defined “composite job” in this way: “In the event the main duties of past relevant work can only be described by considering multiple DOT occupations, a plaintiff may be considered to have performed a composite job.” Shealy v. Colvin, 2015 WL 467726, *12 (D.S.C. Feb. 4, 2015).

That appears to be the case here. Plaintiff testified that she routinely lifted and transported patients in addition to performing the duties of a radiology clerk, which the vocational expert acknowledged was probably due to the fact that she worked in a smaller hospital where such jobs were necessarily combined. Regardless of the reason, however, Plaintiff did not simply perform a single job in an atypical fashion; she performed two different jobs in the typical manner each is normally performed. Consequently, it was incorrect to characterize her past relevant work as consisting only of radiology clerk. This is also an issue which should be revisited on remand.

## VII. Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff’s statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C.

§405(g), sentence four.

VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge